UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA ex rel. DEBRA LEVESKI          PLAINTIFFS

V.                              CIVIL ACTION NO.: 1:07cv0867DFH-JMS

ITT EDUCATIONAL SERVICES, INC.                          DEFENDANT

**FIRST AMENDED COMPLAINT - FILED UNDER SEAL**

COMES NOW *qui tam* Relator Debra Leveski, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, and alleges the following as her First Amended Complaint herein, to wit:

**INTRODUCTION**

1.  This is a civil action brought against ITT Educational Services, Inc. ("ITT"), and on behalf of the United States of America ("U.S."), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3732 (as amended by the False Claims Act Amendments of 1986), to recover damages and civil penalties from ITT.

**VENUE AND JURISDICTION**

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 31 U.S.C. § 3730(b).

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a) as the Defendant during all relevant times maintained its corporate headquarters in, and has directed and orchestrated the conduct that is the subject of this action from, the Southern District of Indiana.

4.  Jurisdiction is proper pursuant to 31 U.S.C. § 3730(e) as Relator's allegations in this First

1

Amended Complaint are based on her direct and independent knowledge and not from any public disclosure. In addition has voluntarily provided that information forming the basis of Relator's direct and independent knowledge to the U.S. before filing her Complaint and First Amended Complaint.

## PARTIES

5.    Relator Debra Leveski ("Relator") is an adult resident citizen of the U.S. and Lake Orion, Michigan. She was employed by ITT as an inside representative or student recruiter from January 8, 1996, through and until April 15, 2002, engaged in full-time student recruiting. In that capacity, she worked in the ITT admissions department. In the course of her work, Relator became familiar with the marketing activities ITT conducted throughout the U.S. to recruit students for enrollment at "colleges" owned and controlled by ITT.

6.    Relator was employed by ITT as a financial aid administrator from April 15, 2002, through and until November 3, 2006, engaged full-time in packaging students for financial aid (including Pell grants, Federal Supplemental Educational Opportunity ("FSEO") grants, PLUS loans and Stafford loans) to meet the tuition and fees associated with ITT attendance for present and future students. From January 1, 2002, through December 31, 2006, ITT obtained $354,180,000 in Pell grants from the Department of Education ("DOEd").[1]

7.    ITT is a publically traded corporation, organized under Delaware law. At all periods relevant to this case, ITT maintained its corporate headquarters and principal place of

_____

[1]This figure was obtained by multiplying the percentage of ITT Pell grant revenues with ITT's total revenues as stated in its 10K for each year from January 2002, through December 2006.

2

business at 1300 North Meridian Street, Carmel, Indiana. ITT's headquarters are located within this district. This is also the district from which ITT devised the compensation schemes and related practices challenged in this action. As of September 27, 2007, ITT operated 95 ITT Technical Institutes in 34 states which primarily offer career-focused degrees of study to approximately 47,000 students.

8.    The U.S. is named as a Plaintiff herein pursuant to the False Claims Act. As a result of the false records, statements and claims alleged in this First Amended Complaint that were made by, or caused by, ITT, funds of the U.S., through the DOED, were directly disbursed and awarded to ITT and to Federal Family Education Loan Program ("FFELP") lenders. The funds were disbursed and awarded pursuant to the Higher Education Act, 20 U.S.C. §§ 1071 et seq. ("HEA"), as a result of the false claims alleged in this First Amended Complaint.

**Conditions for ITT's Entitlement to Proceeds of Pell and FSEO Grant Proceeds**

9.    ITT, and/or its units or subsidiaries, directly received Pell and FSEO grants from the U.S. made pursuant to the HEA. These funds provided ITT with much of its revenues to pay for its students' tuition and fees. A substantial majority of the students recruited to and enrolled in ITT institutions receive Pell or FSEO grants. Proceeds from all such HEA grants are disbursed directly to ITT by the DOED and ITT is in charge of administering the grant proceeds it receives by crediting the appropriate amount of grant monies to the account of each eligible student. To receive a Pell or FSEO grant, a student must have financial need. The expected family contribution ("EFC") formula is the standard formula used in determining financial need for Federal Student Aid programs. The

4

formula produces an EFC number. The lower the EFC number, the greater the student's financial need, and thus eligibility for Pell and FSEO grant funds is contingent on the student's EFC number. The EFC is computed by the Central Processing System and is based on the information presented to the DOEd in the student's FAFSA. The FAFSA is false because it contains a Federal school code for ITT that is a representation that ITT is an eligible institution, which it is not for knowingly violating the enrollment and financial aid incentive prohibition discussed *infra*. The FAFSA also misrepresents that the student is eligible for Pell and FSEO grant proceeds in that he is an eligible borrower, which he is not because ITT is not an eligible institution. ITT causes the student to present the FAFSA to an employee of the DOEd for Pell and FSEO grant funds. The amount ITT awards the student on a Pell grant is based upon the information received from the Central Processing System in an Institutional Student Information Records ("ISIR") that is created based on the information contained in the FAFSA. ITT then credits the amount of Pell grants authorized by the ISIR based upon the student's EFC, and presents a disbursement record to the DOEd for each ITT student. ITT then submits requests to employees of the DOEd for funds to replenish its Pell and FSEO grant accounts. These requests are false because they represent ITT is an eligible institution and the information contained therein is in compliance with FFELP laws and regulations.

10.    As a legal prerequisite to any legal entitlement to receive Pell grants, FSEO grants, or FFELP loan proceeds, each of the ITT-owned and/or controlled "colleges" is required by HEA statute and regulation to make certain explicit certifications on the face of a Program Participation Agreement ("PPA"). A sample PPA is attached hereto as exhibit

"A". The PPA is entered into between an employee of the DOEd and each ITT college. The PPA makes it clear to the signatory institutional representative that, "[t]he execution of this Agreement by the institution and the Secretary is a prerequisite to the institution's initial and continued participation in any Title IV, HEA program."

11. Among the explicit certifications and statements signed by, and/or on behalf of, each ITT-controlled institution as a prerequisite for participation in the Title IV program, and as a condition of DOEd payment, is the following certification that the ITT institution:

> will not provide, nor contract with any entity that provides, any commission, bonus or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student or admission activities or in making decisions regarding the awarding of student financial assistance ...

12. The prohibitions set forth above, will be referred to hereafter as the "enrollment and financial aid incentive prohibition". The enrollment and financial aid incentive prohibition is an essential and core part of the congressional policy behind the Title IV program. The Title IV program was designed by congress and the DOEd to protect the fiscal integrity and the educational effectiveness of HEA subsidies. One way Congress sought to insure the integrity of the Title IV program was to remove incentives for post-secondary institutions to recruit and enroll students, and sell financial aid to persons, who are not likely to successfully complete ITT's academic programs, or to benefit therefrom. In the case of FFELP loans, Congress intended to remove incentives to recruit, enroll and award FFELP loans to persons who are not likely to be able and/or willing to

9

repay their FFELP loans or benefit from the education.

13.     Throughout its participation in the Title IV program, ITT and all of its ITT owned "colleges" knew, should have known and continue to know that compliance with the terms of the enrollment and financial aid incentive prohibition were restated in the certification of ITT's own PPA as well as in the HEA statutes and regulations themselves. In fact, in its December 31, 2005, Securities and Exchange Commission 10-K annual report, ITT states," [t]he HEA prohibits an institution that participates in Title IV programs from providing any incentive, bonus or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any person or entity engaged in any student recruitment or admissions activity or in making decisions regarding the awarding of Title IV program funds."

14.     At all times relevant to this First Amended Complaint, ITT knew, should have known, and continues to know that compliance with the terms of the enrollment and financial aid incentive prohibition was a legal prerequisite to and integral to ITT's entitlement to proceeds from Pell grants, FSEO grants, PLUS loans and Stafford loans. ITT knew, should have known and continues to know that it was not entitled to the proceeds of any Pell grant or FSEO grant paid by the DOED on behalf of any individual or prospective ITT student absent its compliance with the enrollment and financial aid incentive prohibition. ITT knew, should have known and continues to know that it was not entitled to the proceeds of any FFELP loan paid by a FFELP lender on behalf of any individual or prospective ITT student absent its compliance with the enrollment and financial aid incentive

prohibition. Compliance with the enrollment and financial aid incentive

prohibition is a condition of payment for an institution to receive any proceeds

from a Pell grant, FSEO grant or FFELP loan.

**ITT Knowingly Violated the Enrollment and Financial Aid Incentive Prohibition**

15.     Throughout the entire decade preceding the filing of this action, ITT and its

management knew, should have known and continues to know that ITT was in

continual violation of the enrollment recruitment and financial aid incentive

prohibition. ITT knew, should have known, and continues to know it was in

violation of the prohibition when it caused to be presented and submitted each

FFELP loan application on behalf of each student or prospective student who

purported to be eligible to serve as borrowers of such loans. ITT knew, should

have known, and continues to know it was in violation of the prohibition when it

presented and submitted each Fiscal Operations Report and Application to

Participate ("FISAP") for FSEO grant proceeds. A sample FISAP is attached

hereto as exhibit "B". ITT knew, should have known, and continues to know it

was in violation of the prohibition when it presented and submitted each request

for funds for Pell grant proceeds to credit student accounts using the DOE's

Common Origination and Disbursement process, which is simply a hybrid of the

former Recipient Financial Management System process. ITT would present

origination and disbursement forms to employees of the DOE for Pell grant

funds it knew, should have known and continues to know it

was in violation of the prohibition when it presented or caused to be presented

each Federal Stafford Loan School Certification, where ITT falsely certifies the

7

8

student on the Certification is an eligible borrower to receive the Stafford loan proceeds. A copy of this form is attached hereto as exhibit "C". The certification is false because a student is not an eligible borrower unless he attends an eligible institution, which ITT has never been because of its violation of the enrollment and financial aid incentive prohibition. ITT knew, should have known and continues to know it was in violation of the prohibition when it presented or caused to be presented to an employee of the U.S. each Federal PLUS Loan Information and School Certification, where ITT falsely certifies the student on the Certification is an eligible borrower to receive the benefit of PLUS loan proceeds. A copy of this form is attached hereto as exhibit "D". The certification is false because a student is not an eligible borrower unless he attends an eligible institution, which ITT was not because of its violation of the enrollment and financial aid incentive prohibition. ITT management knew, should have known and continues to know that ITT's systematic and continual corporate policy of engaging in the compensation schemes that violated the enrollment and financial aid incentive prohibitions deprived the student and ITT of any entitlement to Stafford or PLUS loan proceeds, and deprived all FFELP lenders who submitted claims for interest subsidies, special allowance payments and default claims on the FFELP loans they hold for loans made to ITT students and prospective students of any right to those subsidies.

16.   Throughout the entire decade preceding the filing of this action, ITT caused and directed its institutions to pay (and to withhold) additional compensation to its individual student recruiters, rewarding such student recruiters based solely on

6

the number or level of enrollment and starts the student recruiter achieved. The term start means a student recruiter persuades a prospective student to enter a specific ITT program and sit in class for the first time. Enrollment means a signed agreement between the prospective student and ITT school for the student to enter into a program, which itemizes the cost and duration for completion of the specific ITT program the student agrees to enter.

17. Throughout the entire decade preceding the filing of this action, ITT caused and directed its institutions to pay (and to withhold) additional compensation to its individual financial aid administrators based solely upon the number and volume of financial aid awards re-packaged or packaged for the current or prospective student, respectively.

18. ITT, in flagrant violation of the HEA prohibition, compensates inside representatives, including Relator when she was an inside representative, based solely upon their success in enrollment activities. In an inside representative's performance, planning and evaluation ("PPE") review, the minimum amount of student enrollments and student starts the inside representative must meet is quantified. The raise an inside representative obtains is directly related to and a function of that inside representative's success in securing enrollments and starts.

19. ITT, in flagrant violation of the HEA prohibition, compensates its financial aid administrators, including Relator when she was a financial aid administrator, based solely upon their success in securing federally subsidized financial aid for ITT students and prospective ITT students. In an ITT financial aid administrator's performance, planning and evaluation ("PPE") review, the

minimum amount of the following: the financial aid administrator must meet is quantified: (1) financial aid re-packs finalized for current students to pay for subsequent years of enrollment on the earliest date permitted by the HEA, (2) financial aid packages for new students to pay for initial years of enrollment on the earliest date permitted by the HEA, and (3) Pell grants received by the college on behalf of students by the earliest date permitted by the HEA. The raise a financial aid administrator obtains from ITT is directly related to and a function of that financial aid administrator's success in securing financial aid for ITT students.

20. ITT publishes the top ranking inside representatives and financial aid administrators, based upon their number of student enrollments and starts, and quantity of students for which financial aid is secured, respectively.

21. ITT urges its inside representatives to enroll students without reviewing their transcripts to determine if the student possesses sufficient academic qualifications to benefit from an education at ITT.

22. At the time of signing its PPA with the DOEd, and during the period before the PPA's expiration, ITT knew that its certifications of compliance with the enrollment and financial aid incentive prohibition were false. ITT knew it had no intent or purpose of changing its recruitment or financial aid administrator compensation packages to comply with the prohibition. Accordingly, ITT signed and entered into each PPA fraudulently, intending fraudulently to induce the DOEd to treat ITT as an eligible institution for the purpose of getting payments from the DOEd in response to claims for grants, and to get subsidy payments

10

allowed by the DOEd and Guaranty agencies for ITT's FFELP lenders. ITT induced DOEd payments to ITT and FFELP lenders when ITT knew that it did not meet (and had no intention or plan to meet) the prerequisites and conditions for serving as an eligible institution. By signing the PPA, ITT intended specifically to deceive the DOEd.

**False Claims Presented By ITT**

23.    During the decade immediately preceding the filing of this First Amended Complaint, ITT has continually caused its colleges and other units to make, and has caused individual prospective students recruited by ITT, through the submission of a Free Federal Application for Financial Aid ("FAFSA"), a sample FAFSA is attached hereto as exhibit "E", to make applications directly to the DOEd seeking and claiming entitlement to Pell grants, FSEO grants and FFELP loans to fund the education of each eligible individual prospective and continuing ITT student. Grant proceeds from all such applications for all such grants were disbursed to ITT by the DOEd, and ITT credited each student's account the amount indicated on the student's ISIR. As a part of each application or claim for each such grant, ITT has caused a knowingly false representation to be made to the DOEd by the student that ITT was at the time an eligible institution then in compliance with a valid PPA. As ITT has known throughout its existence, and continues to know, continuing compliance with the terms of its PPA, including the enrollment and financial aid incentive prohibition has been a prerequisite and precondition for any entitlement on the part of ITT to receive any such grant proceeds, and a prerequisite and precondition for any entitlement of ITT's

11

FFELP lenders to interest subsidies, special allowance payments or insurance on borrower default. If ITT did not falsely represent it was an eligible institution in the PPA, Federal Stafford Loan School Certification, and Federal PLUS loan Information and School Certification, and cause students to falsely represent ITT was an eligible institution on the FAFSA, no FFELP lenders would be able to make Stafford and PLUS loans to ITT students, or consolidate FFELP loans taken out by ITT students.

24.  Throughout the decade immediately preceding the filing of this action, ITT has continually caused its colleges to make, and has caused individual prospective students recruited to ITT to make, applications to private lenders for FFELP loan proceeds, to be disbursed to ITT or one of its subsidiaries. The FFELP, in turn, includes federally subsidized Stafford loans, PLUS loans, and Federal Consolidation Loans. When any such FFELP loan has been the subject of a default, ITT, in turn, has caused the FFELP lender to represent falsely to a Guaranty agency in a Claim Form, a sample of which is attached hereto as exhibit "F", that ITT was then an eligible institution in compliance with its PPA, and the FFELP lender was eligible to claim and receive an insurance payment from the Guaranty agency on the defaulted loan with DOEd funds. Also, ITT caused the FFELP lender to violate its agreement with the Guaranty agency to only submit default claims for eligible FFELP loans. As ITT has known throughout its existence, and continues to know, continuing compliance by it and its subsidiaries with the terms of the PPA, including the enrollment and financial aid incentive prohibition, has been a prerequisite and precondition for any

entitlement on the part of any FFELP lender to receive any such insurance

proceeds for a borrower default. In addition, ITT has caused each such FFELP

lender to present false claims directly to the DOEd for interest subsidies and

special allowance payments on each FFELP loan it holds made to an ITT student,

graduate or drop-out, on a LaRS/799 form. A sample LaRS/799 is attached

hereto as exhibit "G". As ITT has known throughout its existence, and continues

to know, compliance by it and its units with the terms of its PPA, including the

enrollment and financial aid incentive prohibition, has been a prerequisite and

precondition for any entitlement on the part of any FFELP lender to receive any

such interest subsidy or special allowance payment on any such loan it holds that

was made to benefit an ITT student. ITT also caused its FFELP lender holding

FFELP loans made to benefit an ITT student to falsely represent to the DOEd in a

Lender/Servicer Organization Participation Agreement that the data submitted on

the LaRS/799 will be accurate and in compliance with FFELP laws and

regulations. A sample Lender/Servicer Organization Participation Agreement is

attached hereto as exhibit "H".

25.   Pursuant to 20 U.S.C. § 1077, a FFELP loan is insurable by the DOEd, and thus

eligible for interest subsidies, special allowance payments and default guaranty

payments, by the DOEd only if, *inter alia*, the student's institution executed and

complies with a PPA. 20 U.S.C. §§ 1091 and 1094(a). ITT falsely certified as to

each of its students that applied for FFELP loan proceeds that ITT was an eligible

institution on the Federal Stafford Loan School Certification and/or Federal

PLUS Loan Information and School Certification, by certifying that the student

13

14

was eligible to benefit from the Stafford and PLUS loan proceeds. ITT's

fraudulent scheme caused private lenders who made FFELP loans to ITT

students to present false default claims to a Guaranty agency on loans the FFELP

lender holds that were made to ITT students, graduates or drop-outs. These

default claims by a FFELP lender holding a loan made to an ITT student were

paid with U.S. monies, only because ITT lied about its compliance with the

student recruitment and financial aid incentive prohibition in its PPA.

26.     Pursuant to 20 U.S.C. § 1078(a)(1)(A), a FFELP lender receives interest

subsidies from the DOEd on FFELP loans it holds to reduce the burden on

students to pay interest while in school, grace or deferment, and to maximize the

FFELP lenders' profits. In order to be eligible for interest subsidies, the FFELP

loan must be insured by the DOEd. As indicated in the above paragraph, ITT's

execution and compliance with the PPA is a prerequisite to a loan being

insurable by the DOEd. Thus, ITT's execution of, and compliance with, the PPA

is a prerequisite to the FFELP lenders' initial and continuing right to receive

interest subsidies on the loans taken out by ITT students, graduates or

drop-outs. ITT's fraudulent scheme has caused FFELP lenders to make false

claims for interest subsidies on FFELP loans the lender made to ITT students,

graduates or drop-outs. The FFELP lender is only eligible for interest subsidies

on loans made to students of an eligible institution. ITT causes FFELP lenders to

falsely claim interest subsidies from the DOEd on a LaRS/799 submitted

electronically by the lender to the DOEd through the Lenders Reporting System.

The FFELP lender uses the false ITT PPA, Federal Stafford Loan School

Certification and Federal PLUS Loan Information and School Certification,
Lender/Servicer Organization Participation Agreement, and LaRS/799 to get
false claims for interest subsidies paid by the U.S. The FFELP lenders also use
the false statement of ITT students on the FAFSA that ITT is an eligible
institution in order to get its false claims for interest subsidies paid by the DOEd.
The only reason the false claims were paid by the U.S. is because ITT lied to the
DOEd in its PPA when certifying compliance with the enrollment and financial
aid incentive prohibition.

27.    Pursuant to 20 U.S.C. § 1087-1(b)(3), a private lender holding an eligible loan
shall be deemed to have a contractual right against the U.S., during the life of
such loan, to receive a federal subsidy known as the special allowance payment.
However, the definition of an eligible loan excludes those loans that are not
insured by the DOEd. 20 U.S.C. § 1078-1(b)(5). ITT's (1) execution of a PPA,
(2) proof of compliance with the PPA by the borrower's institution, (3) execution
of a Federal Stafford Loan School Certification and (4) execution of a Federal
PLUS Loan School Certification, the FFELP lender's execution of a
Lender/Servicer Organization Participation Agreement and LaRS/799, and the
student's execution of a FAFSA are prerequisites to the FFELP lender's legal
entitlement to special allowance payments from the DOEd on FFELP loans held
by that lender. ITT's fraudulent scheme has caused FFELP lenders to present
false claims to the DOEd using a LaRS/799 form for special allowance payments
on FFELP loans the lenders made to ITT students, graduates or drop-outs. The
FFELP lenders use the false statement of ITT on the PPA that ITT complies with

15

the enrollment and financial aid incentive prohibition in order to get their false claims for special allowance payments paid by the DOEd. The FFELP lenders use the false statement of ITT on the Federal Stafford Loan School Certification, and Federal PLUS Loan Information and School Certification in order to get its false claims for special allowance payments paid by the DOEd. Thus, ITT causes the FFELP lender to make false records and statements on their Lender/Servicer Organization Participation Agreement and LaRS/799 to get false claims for special allowance payments allowed and paid by the U.S. ITT also caused the student to make false records and statements on the FAFSA to get false claims for special allowance payments allowed and paid by the U.S. The only reason the DOEd paid those claims is because ITT lied to the DOEd in its PPA when certifying compliance with the enrollment and financial aid incentive prohibition.

28.     ITT knew at the time of each such FFELP loan or grant application, and continues to know, for each such FSEO grant, Pell grant or FFELP loan that its compliance with, and obedience to, the enrollment and financial aid incentive prohibition was a precondition of, was material to, and was integral to any entitlement of ITT (or any FFELP lender holding loans made to ITT students) to be paid with DOEd funds. ITT also knew, and continues to know, that it was not in compliance with the enrollment and financial aid incentive prohibition, had not been in compliance with the prohibition at the time of the most recent signing of its PPA, had not been in compliance for at least the past decade, and had no intention or plan to come into compliance. ITT knew, and continues to know, that its students were not eligible students to benefit from Stafford loan proceeds when it submitted its Federal Stafford Loan School Certification to the U.S. and

16

the FFELP lender. ITT knew, and continues to know, that its students were not

eligible students to benefit from PLUS loan proceeds when it submitted its

Federal PLUS Loan Information and School Certification to the U.S. and FFELP

lender for each ITT student. ITT therefore knew at the time of each such loan or

grant application (or default, interest subsidy or special allowance claim ITT

caused to be made by a FFELP lender) that each such claim was factually and

legally false.

29. ITT knew at the time of each such application for each such FSEO grant, Pell

grant or FFELP loan, and continues to know, that ITT and the FFELP lender

were using ITT's purported status as an eligible institution as a part of each such

claim or application for grants and federal loan subsidies. ITT knew that it was

therefore using (or causing to be used) the false representations in its PPA, as a

legally necessary, material, and integral part of, condition of, and cause of, each

such application or claim for a FSEO of Pell grant, or FFELP lender claim for

loan default, interest subsidies and special allowance payments. ITT knew that it

was therefore using (or causing to be used) the false representations in its Federal

Stafford Loan School Certification and Federal PLUS Loan Information and

School Certification, and the false representations made by the student in his

FAFSA, as a legally necessary, material, and integral part of, condition of, and

cause of, each such application or claim for Stafford loan proceeds, loan default,

interest subsidies and special allowance payments. Each such use of ITT's

representations and certifications in its PPA was known, and continues to be

known, by ITT to be integral to the causal chain leading to the making of each

disbursement directly to ITT, and the subsidy paid to FFELP lenders on loans

made to ITT students, as a result of each such false claim.

**Count 1 – Violations of False Claims Act - 31 U.S.C. § 3729(a)(1) - ITT Knowingly Presented, and Caused Students to Present, False Claims to the DOEd for Pell Grant and FSEO Grant Funds**

30.    Relator hereby re-alleges and incorporates by reference all allegations set forth in this First Amended Complaint.

31.    In performing all of the acts set out herein, ITT knowingly presented and caused to be presented, to the DOEd and to other officers, employees or agents of the U.S., false claims and fraudulent claims for approval and payment out of U.S. funds, and caused losses to the U.S. in the amounts of those payments for Pell grant and FSEO grant proceeds as to each and every such claim to the DOEd for Pell and FSEO grant monies disbursed directly to ITT by the U.S. since no later than January 8, 1996, all in violation of 31 U.S.C. § 3729(a)(1).  The presented claims were false because ITT represented on the FIASP and origination and disbursement forms it submitted to the DOEd for FSEO and Pell grant proceeds, respectively, that ITT was an eligible institution and that all grants were made in compliance with HEA laws and regulations.  Compliance with the requirements of the PPA and FIASP are conditions of payment for Pell and FSEO grants.

32.    In performing all of the acts set out herein, ITT knowingly presented and caused to be presented by ITT students, to the DOEd and to other officers, employees or agents of the U.S., false claims and fraudulent claims for approval and payment out of U.S. funds, and caused losses to the U.S. in the amounts of those payments for Pell grant and FSEO grant proceeds as to each and every such claim to the DOEd for Pell and FSEO grant monies disbursed directly to ITT by the U.S. since no later than January 8, 1996, all in violation of 31 U.S.C. § 3729(a)(1).  The presented claims were false because the ITT student certified on the FAFSA

be presented to the U.S. that ITT was an eligible institution, which was caused by

ITT providing or making available a Title IV school code for the institution,

directing the student to submit a FAFSA identifying ITT by its Title IV school

code and directing the student to present the FAFSA to the DOEd or presenting

the FAFSA to the DOEd for the student.

33.   By virtue of and as a result and cause of the false claims presented, and caused to

be presented by ITT, the U.S. suffered actual damages and is entitled to recover

three times the amount by which it is damaged, plus civil money penalties of not

less than $5,500 and not more than $11,000 for each of the false claims presented

or caused to be presented, and other monetary relief as determined appropriate

from the evidence to be presented at the trial hereof.

**Count II - Violations of False Claims Act - 31 U.S.C. § 3729(a)(1) - ITT Knowingly**
**Caused FFELP Lenders to Present False Claims to the U.S. for Interest Subsidies**
**and Special Allowance Payments on a LaRS/799**

34.   Relator hereby re-alleges and incorporates by reference all allegations set

forth in this First Amended Complaint.

35.   In performing all of the acts set out herein, ITT knowingly caused FFELP lenders

holding loans made to ITT students to present to employees of the U.S., false and

fraudulent claims for approval and payment of U.S. money, and caused losses to

the U.S. in the amounts of those payments, for interest subsidies and special

allowance payments. Since the FFELP lender is not entitled to any special

allowance payments or interest subsidies on the loans made to ITT students

because ITT is not compliant with the PPA and the student is not an eligible

borrower as certified by ITT in each Federal Stafford Loan School Certification

and Federal PLUS Loan Information and School Certification, and as certified by

the borrower in each FAFSA, all submitted to an employee of the DOEd for each

ITT student, the LaRS/799 contains a false statement as to the amount of money due the FFELP lender in interest subsidies and special allowance payments by the U.S. and that the loans are compliant with all FFELP laws and regulations.

36.   By virtue of and as a result and cause of the false claims caused to be presented by ITT, the U.S. suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims ITT caused to be presented by the FFELP lenders holding its students loans, caused to be presented by ITT students and other monetary relief as determined appropriate from the evidence to be presented at the trial hereof.

**Count III - Violations of False Claims Act - 31 U.S.C. § 3729(a)(2) - ITT Knowingly Made Used and Caused to be Made and Used False Records and Statements to Get False and Fraudulent Claims Paid and Approved by the U.S. for Pell Grants and FSEO Grants**

37.   Relator hereby re-alleges and incorporates by reference all allegations set forth in this First Amended Complaint.

38.   In performing all of the acts set out herein, ITT used the false record of its PPA, and the false statements contained in its PPA, to get false and fraudulent claims for Pell and FSEO grant proceeds paid from the U.S. ITT compliance with and obedience to the enrollment and financial aid incentive prohibition contained in the PPA is a condition of payment for Pell and FSEO grant claims the U.S. pays for Pell and FSEO grant proceeds paid by the U.S. Thus, the underlying claim caused to be paid by the false PPA is itself false because the institution is not eligible for the claimed Pell or FSEO grant proceeds because of its non-compliance with the enrollment and financial aid incentive prohibition. Moreover, the underlying FSEO grant claims are false because ITT represents to the DOEd on a FISAP that it is an eligible institution for the receipt

of FSEO grants. This assertion makes the underlying FSEO grant claims false because ITT is not an eligible institution for the receipt of FSEO grant funds because of ITT's non-compliance with the enrollment and financial aid incentive prohibition ITT certified compliance with on the PPA. The underlying Pell grant claims are false and fraudulent because ITT represents to the DOEd on origination and disbursement forms that it is an eligible institution for receipt of Pell grants. This assertion makes the underlying claim false because ITT is not an eligible institution for the receipt of Pell grant funds because of ITT's non-compliance with the recruitment and financial aid incentive prohibition ITT certified compliance with on the PPA.

39.     In performing all of the acts set out herein, ITT knowingly made, used and caused to be made and used false and fraudulent PPA certifications, FAFSAs, FISAPs, origination forms and disbursement forms, that ITT colleges and controlled institutions were eligible to receive Pell and FSEO grant proceeds, to be used as an integral part of the process of causing false and fraudulent claims to be paid as to each and every such claim and payment for such grant proceeds which were disbursed directly to ITT or to any of its subsidiaries. Beginning no later than January 8, 1996, all claims paid or approved to benefit ITT students for Pell or FSEO grant proceeds are false claims, all in violation of 31 U.S.C. § 3729(a)(2).

39.     By virtue of and as a result and cause of the false claims paid or caused to be paid by the U.S. caused by ITT's making or using, or causing the making or using, of such false statements and records, the U.S. has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of

21

the false claims paid or caused to be paid by the U.S. as a result of the false

statements and records, and other monetary relief as determined appropriate from

the evidence to be presented at the trial hereof.

**Count IV - Violations of False Claims Act - 31 U.S.C. § 3729(a)(2) - ITT Knowingly Made, Used and Caused to be Made and Used False Records and Statements to Get False and Fraudulent Claims Paid and Approved by the U.S. for Special Allowance Payments and Interest Subsidies on PLUS and Stafford Loans Made to ITT Students by FFELP Lenders**

39.     Relator hereby re-alleges and incorporates by reference all allegations set

forth in this First Amended Complaint.

40.     In performing all of the acts set out herein, ITT knowingly made, used and

caused to be made and used false and fraudulent PPA certifications, Federal

Stafford Loan School Certifications, Federal PLUS Loan Information and School

Certification, FAFSAs, Lender/Servicer Organization Participation Agreements,

and LaRS/799 forms and other representations that holders of FFELP loans made

to ITT students were eligible to receive interest subsidies, and special allowance

payments.  Since FFELP lender entitlement to any interest subsidies or special

allowance payments is conditioned upon ITT's compliance with the enrollment

and financial aid incentive prohibition, and ITT knowingly violated this

prohibition, any and all claims by a FFELP lender for interest subsidies and

special allowance payments on FFELP loans made to ITT students are false

because the FFELP lender requests the U.S. money on the LaRS/799 to which it

is not entitled because of ITT's fraud disqualifying the holder of those FFELP

loans from any entitlement to interest subsidies and special allowance payments.

The claims by lenders for interest subsidies and special allowance payments are

false because the FFELP lender represents on the LaRS/799 that ITT is an

eligible institution and the loans comply with all FFELP statutes and regulations,

22

which is a false.

41.    By virtue of and as a result and cause of the false claims paid by the U.S. caused by ITT's use and causing to be used such false statements and records, the U.S. has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims paid or caused to be paid by the U.S. as a result of the false statements and records by FFELP lenders, and other monetary relief as determined appropriate from the evidence to be presented at the trial hereof.

**Count V – Violations of False Claims Act – 31. U.S.C. § 3729(a)(2) – ITT Making, Using and Causing to Be Made or Used, False Records and Statements by FFELP Lenders to Get False or Fraudulent Borrower Default Claims for U.S. Funds Paid or Approved by Guaranty Agencies**

42.    Relator hereby re-alleges and incorporates by reference all allegations set forth in this First Amended Complaint.

43.    In performing all of the acts set forth herein, ITT caused the PPA, Federal Stafford Loan School Certification, Federal PLUS Loan Information and School Certification, FAFSA and Claim Form to be used by ITT students and the FFELP lenders who hold loans made to ITT students, graduates and drop-outs, in order to get false and fraudulent claims for payment on default claims approved by the appropriate Guaranty agency insuring the loan. The underlying claims are false because the FFELP lender indicates on the Claim Form that the loans were made and disbursed in compliance with federal statutes and regulations, including the requirement that a FFELP loan be made to a student of an eligible institution in order for the student's FFELP lender to be eligible for payment of a default claim by the Guaranty agency. As discussed above, ITT is not an eligible institution,

and ITT knowingly misrepresents, and causes ITT students and FFELP lenders to

misrepresent, to the DOEd and the Guaranty agency that ITT is an eligible

institution.  The Claim Form is also false because the lender claims an amount of

money from the Guaranty agency which it is not entitled because the borrower is

not an eligible borrower.

44.    By virtue of and as a result and cause of the false default claims caused to be paid

by the Guaranty agency with U.S. funds because of the false statements ITT

made and caused to be made, the U.S. has suffered actual damages and is entitled

to recover three times the amount by which it is damaged, plus civil money

penalties of not less than $5,500 and not more than $11,000 for each of the false

claims paid or caused to be paid by the U.S. a result of the false statements and

records, and other monetary relief as determined appropriate from the evidence to

be presented at the trial hereof.

**Count VI - Violations of False Claims Act - 31 U.S.C. § 31 U.S.C. 3729(a)(7) - ITT**
**Used and Caused ITT and FFELP Lenders to Use False Certifications and Other**
**Statements to Avoid Obligations to Re-Pay Funds to the DOEd**

45.    This is a claim on behalf of the United States of America under the False Claims

Act, 31 U.S.C. §§ 3729-33, as amended, specifically for violations of Section

3729(a)(7) thereof.

46.    In performing all of the acts set out herein, Defendant ITT knowingly used,

continues to use, and caused to be used, false and fraudulent PPA certifications,

and other representations (including the FAFSA, Lender/Servicer Organization

Participation Agreement, Federal Stafford Loan School Certification, Federal

PLUS Loan Information and School Certification, LaRS/799, FISAP, origination

and disbursement forms, and the Claim Form) that ITT-controlled colleges were

institutions eligible to receive Title IV proceeds from related DOEd programs,

25

and other false and fraudulent records, to be used as an integral part of the proceeds of and conditions for causing false and fraudulent claims to be made to the DOEd (or to Guaranty Agencies) and to other officers, employees or agents of the United States, for grant proceeds, loan proceeds, interest subsidies, special allowance payments, and loan insurance guaranty payments, in order to be treated by the DOEd as an eligible institution and lender for the lawful receipt of such payments, and in order to avoid the obligation to return or refund to the DOEd funds received by ITT, and the FFELP lenders benefitting from ITT's false statement in its PPA, during periods of time when in fact ITT, because of its violations of the enrollment and financial and incentive prohibition, was not an eligible institution, and thus all funds received directly by ITT, and the FFELP lenders benefitting from ITT's false statement in its PPA, are reverse false claims, all in violation of 31 U.S.C. § 3729(a)(7).

47.     By virtue of and as a result and cause of the false claims presented or caused to be presented by ITT with the use of such statements and records, and the use by ITT of false records or statements to conceal ITT's obligation to return or refund all such payments received by ITT, the U.S. has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claim presented or caused to be presented to the U.S. or a Guaranty agency, and other monetary relief as determined appropriate from the evidence to be presented at the trial hereof.

**PRAYER FOR RELIEF**

WHEREFORE, the U.S. demands and prays that judgment be entered in favor of the U.S.:

A.    On Counts I-VI under the False Claims Act against ITT for three times (or "treble") the amount of funds paid directly by the DOED to ITT or its subsidiaries in Pell and FSEO grants, and to any private lender which received default payments, special allowance payments, or interest payments, as to loans, the original proceeds of which were disbursed directly to an institution owned or controlled by ITT, plus all investigative costs, and all civil penalties as are allowable by law for each false claim, and for costs of this civil action; and

B.    For such other relief as the Court deems just and equitable.

WHEREFORE, Relator demands and prays that judgment be entered in her favor as follows:

A.    On Counts I-V under the False Claims Act, for a percentage of all civil penalties and damages obtained from ITT pursuant to 31 U.S.C. § 3730;

B.    Reasonable attorney's fees, and all costs incurred in the prosecution of this action against the Defendant; and

C.    Such other relief as the Court deems just and proper.

Respectfully Submitted

By: _____
      Timothy J. Matusheski (MBN 100998)

Timothy J. Matusheski (MBN 100998)
Law Offices of Timothy J. Matusheski
PO Box 1421
Waynesboro, Mississippi, 39367
phone: (601) 735-5222
fax: (601) 735-5008

Lane Siesky (IBN 21094-53)
Siesky Law Firm, PC

27

4424 Vogel Road, Suite 305
Evansville, In, 47715
phone: (812) 402-7700
fax: (812) 402-7744

## DEMAND FOR JURY TRIAL

Relator, on behalf of herself and the U.S., respectfully requests a trial by jury on
all counts of this First Amended Complaint.

Respectfully Submitted

By: _____
Timothy J. Matusheski (MBN 100998)

Timothy J. Matusheski (MBN 100998)
Law Offices of Timothy J. Matusheski
PO Box 1421
Waynesboro, Mississippi, 39367
phone: (601) 735-5222
fax: (601) 735-5008

Lane Siesky (IBN 21094-53)
Siesky Law Firm, PC
4424 Vogel Road, Suite 305
Evansville, In, 47715
phone: (812) 402-7700
fax: (812) 402-7744