UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA ex rel. ) <br> DEBRA LEVESKI, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ITT EDUCATIONAL SERVICES, INC., ) <br> ) <br> Defendant. ) <br> ) | Cause No. 1:07-cv-867-WTL-JMS |

## ENTRY ON MOTION TO DISMISS

Before the Court is the Defendant's Motion to Dismiss (Docket No. 77) and the Defendant's Request for Oral Argument (Docket No. 80). These motions are fully briefed, and the Court, being duly advised, now **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss and **DENIES** the Request for Oral Argument.

## I. LEGAL STANDARDS

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations. However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Because the Plaintiff has presented a claim sounding in fraud, she is also subject to the

heightened pleading standard of Rule 9(b). *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Rule 9(b) requires that a plaintiff plead her allegations with particularity. "Particularity" means pleading the who, what, when, where, and how of the alleged fraud. *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990).

## II. BACKGROUND

The Relator, Debra Leveski, was employed by ITT Educational Services, Inc. ("ITT"), at ITT's Troy, Michigan campus. From January 8, 1996 until April 15, 2002, Leveski worked as a Student Recruiter.[1] As a Student Recruiter, Leveski worked in the admissions office and performed "full-time student recruiting." Docket No. 75 ¶ 5. Leveski received a salary and benefits. Student Recruiters also received bonuses based on the number of "applications, enrollments, and starts" they achieved. *Id.* ¶ 26. Although other non-sales factors, such as "assisting the school in meeting its attrition budget, being a team player, appearance, and attitude" were also relevant to obtaining raises, *id.* ¶ 32, Student Recruiters were consistently told that "the only factor that mattered regarding pay raises was success in meeting the sales targets." *Id.* ¶ 34. Further, while Student Recruiters were frequently reminded about the importance of meeting their sales targets, they were never instructed about how to meet their non-sales targets. *See id.* ¶ 32.

In April 2002, Leveski became a Financial Aid Administrator. She was responsible for "making decisions regarding the awarding of student financial assistance to consumers . . .

---

[1] Leveski's Second Amended Complaint uses the terms "Student Recruiter," "Sales Representative," and "Inside Representative" interchangeably. For clarity's sake, the Court will use only the term "Student Recruiter" to refer to this position.

assist[ing] consumers in completing and presenting a [Free Application for Federal Student Aid] to the [Department of Education] . . . and track[ing] student progress on financial aid packages to ensure completion." *Id*. ¶ 35. Leveski also shipped completed financial aid packages to ITT's financial services department in Carmel, Indiana.

"ITT compensated financial aid administrators on a salary basis with full benefits." *Id*. ¶ 37. Pay raises were determined based on the Financial Aid Administrator's score on a Performance, Planning, and Evaluation ("PPE") Review. *Id*. The criteria used to rate a Financial Aid Administrator during her PPE Review included:

> (1) percentage of first time disbursement of Title IV loans by the first available date . . .; (2) shipping [Student Aid Reports] to ITT corporate within 2 weeks . . .; (3) packaging students to ensure ITT could receive Pell Grants from the [Department of Education] . . .; (4) the amount of Pell Grant proceeds received by ITT corporate . . .; (5) securing . . . continuing financial aid for returning students; and (6) maintaining a Pell reject rate of 9% or less.

*Id.* ¶ 35. Leveski remained a Financial Aid Administrator until November 3, 2006.

In 2007, Leveski filed this *qui tam* suit alleging that ITT's compensation practices violate portions of the Higher Education Act ("HEA"), *see* 20 U.S.C. § 1094(a)(20), and that ITT committed fraud on the government by falsely certifying that it was in compliance with the HEA. Specifically, Leveski claims that by paying Student Recruiters bonuses based solely on their success in "enrollment activities" and by paying Financial Aid Administrators bonuses based solely on their success in "securing federally subsidized financial aid," ITT violated the HEA. Furthermore, by repeatedly signing Program Participation Agreements ("PPAs") certifying that it was in compliance with the HEA, ITT committed fraud against the Department of Education. Docket No. 84 at 7-8. ITT "knew that its certifications of compliance with the enrollment and financial aid incentive prohibition were false" and ITT "had no intent or purpose

of changing its recruitment or financial aid administrator compensation packages to comply with the prohibition.  Accordingly, ITT signed and entered into each PPA fraudulently, intending fraudulently to induce the [Department of Education] to treat ITT as an eligible institution." *Id*. at 8.

### III.  DISCUSSION

This Court previously dismissed Leveski's Amended Complaint for failure to plead fraud with specificity as required by FED. R. CIV. P. 9(b).  However, the Court allowed Leveski to amend her complaint.  She has done so, and ITT has now moved to dismiss the Second Amended Complaint for four reasons: (1) Leveski fails to state a claim under Rule 12(b)(6) because she does not aver that either the Student Recruiters or the Financial Aid Administrators were illegally compensated; (2) Leveski's allegations regarding the Student Recruiters do not comply with Rule 9(b); (3) the statute of limitations bars most of the allegations regarding the Student Recruiters; and (4) the government's prior investigation and settlement with ITT negates Leveski's claim that the Department of Education was fraudulently induced to enter the PPAs.

**A.     ITT's additional authority.**

Before the Court can address the substance of the Defendant's Motion to Dismiss, the Court must first determine whether it can consider materials outside of the Second Amended Complaint, including the additional authority submitted by the Defendant.  *See* Docket No. 77, Exs. 1-8.  Leveski argues, under Rule 12(d), that the Court cannot consider these materials without converting the Defendant's motion to dismiss into a motion for summary judgment. Federal Rule of Civil Procedure 12(d) states: "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56." The Seventh Circuit recognizes a narrow exception to this rule. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). "Documents referred to in, but not attached to, a plaintiff's complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion if they are attached to the defendant's motion to dismiss." *Duferco Steel v. M/V Kalisti,* 121 F.3d 321, 324 n.3 (7th Cir. 1997); *see also Venture Ass'ns Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993). Only in this narrow circumstance may the Court consider matters outside the pleadings when ruling on a motion to dismiss.

In the instant case, some, but not all, of the Defendant's exhibits, satisfy the *Levenstein* exception. Exhibit 1 – Leveski's affidavit – is referenced in the Second Amended Complaint and is incorporated by reference. *See* Docket No. 75 ¶ 40; Docket No. 84 at 20. Thus, the affidavit can properly be considered by the Court in ruling on the Defendant's motion to dismiss. Similarly, Exhibits 5 though 8, are referenced in the Second Amended Complaint and are crucial to Leveski's case. Thus, the Court will also consider the contents of these exhibits. However, because Exhibits 2, 3, and 4, are not referenced in the Second Amended Complaint and are not central to the case, the Court did not consider them when ruling on this motion to dismiss.

      **B.**      **Motion to dismiss.**

The Defendant's first contention – that the Second Amended Complaint does not satisfy Rule 12(b)(6) – is not convincing. Although both the Second Amended Complaint and Leveski's affidavit state that ITT had a host of factors it considered when calculating bonuses for Student Recruiters and Financial Aid Administrators, Leveski's contention is that the only factor

that ITT *actually* considered was the number of students recruited or the number of students awarded financial aid. *See, e.g.*, Docket No. 75 ¶¶ 32, 34, 38. As this is the Defendant's motion to dismiss, the Court is obligated to take the facts alleged in the Second Amended Complaint as true and draw all reasonable inferences in favor of Leveski. Therefore, under this plaintiff-friendly standard, Leveski has plead facts sufficient to survive the Defendant's motion to dismiss.

The Defendant's second argument is that Leveski's allegations with respect to the Student Recruiters fail to satisfy Rule 9(b). Under Rule 9(b), a party must plead "the circumstances constituting fraud" with particularity. *See* FED. R. CIV. P. 9(b). "The circumstances of fraud or mistake include 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)). In other words, to properly plead fraud it is necessary to set out "the who, what, when, where and how: the first paragraph of any newspaper story." *DiLeo*, 901 F.2d at 627. The purpose of Rule 9(b) is "to ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). In the instant case Leveski's Second Amended Complaint sets out the alleged fraud in a manner that allows ITT to identify the conduct and respond. Thus, Leveski's Second

Amended Complaint satisfies Rule 9(b).

The Defendant next claims that most of Leveski's allegations regarding the Student Recruiters' compensation are barred by the False Claims Act's six-year statute of limitations. In response, Leveski argues that the ten-year statute of limitations contained in 31 U.S.C. 3731(b)(2) applies. The Court disagrees. The plain language of the statute indicates that this ten-year statute of limitations applies to cases in which the government intervenes. Moreover, the Plaintiff has not cited, and the Court's research has not revealed, a single case in which the ten-year statute of limitations was applied to a case, like this one, in which the government did not intervene. Accordingly, the Court will apply the six-year statute of limitations to the instant case. The Plaintiff filed her original Complaint on July 3, 2007. Any misconduct that occurred more than six years before that date (i.e. conduct occurring before July 3, 2001) is time-barred. To the extent that Leveski's Second Amended Complaint contains allegations that occurred prior to July 3, 2001, the Defendant's motion to dismiss is **GRANTED** and those claims are dismissed.

Finally, the Defendant argues that any allegations regarding the Student Recruiters' compensation must be dismissed because in 2001, the Department of Education investigated ITT's method of compensating these individuals. The matter was settled out of court without either party admitting fault or liability. *See* Docket No. 78 at 18-19. This argument relies heavily on documents appended to the Defendant's motion. As noted above, the Court has not considered some of these exhibits, including, notably, Exhibit 3 – the settlement agreement between ITT and the government. While the existence and contents of the settlement agreement may be the groundwork for a motion for summary judgment, at this stage of the litigation, the

Court has not, and will not, consider this evidence.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss (Docket No. 77) is **GRANTED IN PART AND DENIED IN PART**.  The Defendant's Request for Oral Argument (Docket No. 80) is **DENIED**.

SO ORDERED:    05/12/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Frederick D. Emhardt
Plews Shadley Racher & Braun
emhardt@psrb.com

Gregory M. Gotwald
Plews Shadley Racher & Braun
ggotwald@psrb.com

Nicola T. Hanna
Gibson Dunn & Crutcher LLP
NHanna@gibsondunn.com

Timothy John Hatch
Gibson Dunn & Crutcher LLP
thatch@gibsondunn.com

John M. Ketcham
Plews Shadley Racher & Braun
jketcham@psrb.com

Timothy J. Matusheski
Law Offices of Timothy J. Matusheski
tim@mississippiwhistleblower.com

Philip A. Whistler
Ice Miller LLP
philip.whistler@icemiller.com

Shelese M. Woods
United States Attorney's Office
shelese.woods@usdoj.gov

James L. Zelenay Jr.
Gibson Dunn & Crutcher LLP
jzelenay@gibsondunn.com