# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, <br> DEBRA LEVESKI, <br><br> Plaintiffs, <br><br> v. <br><br> ITT EDUCATIONAL SERVICES, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 1:07-cv-00867-TWP-MJD |

## ENTRY ON DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on ITT Educational Services, Inc.'s ("ITT"), Motion to Dismiss (Dkt. 141) *qui tam* relator, Debra Leveski's, ("Leveski") complaint. Leveski filed suit in this Court alleging ITT violated the False Claims Act ("the FCA") by causing false claims to be presented to the United States for federal educational grants and loan subsidies arising under Title IV of the Higher Education Act ("the HEA"). ITT filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), for want of jurisdiction. For the reasons set forth herein, ITT's Motion to Dismiss (Dkt. 141) is **GRANTED**.

## I. LEGAL STANDARD

A motion to dismiss may challenge subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The objection that a federal court lacks subject matter jurisdiction pursuant to Rule 12(b)(1) may be raised at any stage in any litigation. See *Arbaugh v Y & H Corp.,* 546 U.S. 500, 506 (2006). The FCA's public disclosure jurisdictional bar found in 31 U.S.C. § 3730(e)(4)(A) provides as follows:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of <u>allegations or transactions</u> in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an <u>original source of the information</u>.

(emphasis added); *U.S. ex rel. Brown v. Walt Disney World Co.*, 2008 WL 2561975, at *3 (M.D. Fla. June 24, 2008). In determining jurisdiction, 31 U.S.C. § 3730(e)(4)(A) poses three questions: (i) are "disclosures of allegations or transactions" within the public domain?; (ii) is the suit "based upon" these disclosures?; and (iii) if so, is the relator nonetheless "an original source of the information?" *U.S. ex. Rel. Baltazar v. Warden and Advanced Healthcare., Assoc., S.C.,* 635 F.3d 866,867 (7th Cir. 2011). "At each stage of the [§ 3730(e)(4)] jurisdictional analysis, the plaintiff bears the burden of proof." *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009).

## II. FACTUAL BACKGROUND

ITT is a publicly traded corporation that owns and operates numerous post secondary schools across the nation. Leveski was employed by ITT for a period of approximately ten years at its Troy, Michigan campus. Leveski worked from January 8, 1996 until April 15, 2002, in the admissions department as a Student Recruiter and then from April 15, 2002 until November 3, 2006 as a Financial Aid Administrator at the same campus. While employed by ITT as a Student Recruiter, Leveski dealt specifically with recruiting students. As a Financial Aid Administrator, she was responsible for packaging federal financial aid for present and future students, including Pell grants, Federal Supplemental Educational Opportunity grants, PLUS loans and Stafford loans.

Under Title IV of the HEA, ITT is an "eligible" institution, which allows ITT to participate in federal student financial assistance programs. To be considered an eligible

institution and participate in these loan programs, particular requirements must be met. Each of the ITT-owned and controlled colleges are required by HEA statute and regulation to make certain explicit certifications on the face of an agreement known as the Program Participation Agreement.

The HEA requires that an institution must "not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance..." 20 U.S.C. § 1094(a)(20) ("incentive compensation provision"). The purpose behind this requirement was well stated by the court in *Lopez v Strayer*:

> The underlying concern here is that institutions, motivated by profit rather than a legitimate educational purpose, will recruit unqualified students who will then find themselves unable to repay these loans, causing a significant loss to the U.S. government which: 1) pays the funds directly to the schools on behalf of the students; or 2) guarantees other loans and thus is liable in the event of default. Thus, the ban on incentive payments and commissions is meant to curb eligible schools from recruiting unqualified students simply to fill quotas and turn a profit, which ultimately works to the detriment of the U.S. government.

*U.S. ex rel Lopez v. Strayer Educ., Inc.*, 698 F. Supp. 2d 633, 635 (E.D. Va. 2010).

The federal government does allow some adjustment in compensation of employees, as long as it is not adjusted more than twice during any twelve month period, and the adjustment is not based *solely* on the number of students recruited, admitted, enrolled, or awarded financial aid. 34 C.F.R. § 668.14(b)(22)(ii)(A).

Under the Act, private individuals … referred to as "relators," may file civil actions known as *qui tam* suits on behalf of the United States to recover money that the government paid as a result of conduct forbidden under the Act. As an incentive to bring suit, a prevailing relator may collect a substantial percentage of any funds recovered for the benefit of the government.

In 2005, Leveski brought an unrelated lawsuit against ITT for an employment matter. The employment dispute was settled and Leveski left ITT in November 2006. In 2007, Leveski was contacted by a private investigator working for attorney Timothy Matusheski. Prior to meeting and talking with Mr. Matusheski, Leveski did not believe that ITT was in violation of any incentive compensation provision, nor did she have any intention of bringing an FCA suit against ITT. After speaking with the attorney, Leveski began to garner an interest in the FCA and a potential *qui tam* lawsuit. Leveski conducted research on the internet regarding ITT's compliance with Title IV regulations and reviewed *qui tam* suits that had previously been filed against ITT. Leveski filed this suit under seal in 2007. She alleges ITT violated the FCA by causing false claims to be presented to the United States for federal educational grants and loan subsidies arising under Title IV of the HEA. Leveski contends that ITT breached a promise to comply with regulations under Title IV of HEA, specifically the incentive compensation provision that governs how schools compensate student recruiters and financial aid employees. Leveski further alleges that ITT violated the FCA by using false statements in its Program Participation Agreements ("PPA") to get these false claims paid by the United States. The government declined to intervene and ITT ultimately brought the present Motion to Dismiss.

### III. DISCUSSION

The Seventh Circuit has provided district courts with a blueprint to follow when analyzing claims under § 3730(e)(4). To determine whether it has jurisdiction to hear a *qui tam* suit under the FCA, the court conducts a three-step inquiry, consisting first of examining "whether the relator's allegations have been publicly disclosed". *Glaser*, 570 F.3d at 913. If the court answers in the affirmative, it next asks "whether the lawsuit is 'based upon' those publicly disclosed allegations." *Id*. If the answer is yes, the court must then determine whether the

relator is an "original source" of the information upon which his lawsuit is based. *Id*. If so, then jurisdiction stands. *Id*.

The threshold jurisdictional question in this case then becomes whether Leveski's lawsuit is "based upon" a "public disclosure" of ITT's alleged violations of the incentive compensation regulation. ITT asserts that the first two prongs of the § 3730(e)(4) analysis are easily established. Keeping in mind that the Seventh Circuit has articulated that this particular part of the analysis is intended to be a "quick trigger" for the original source analysis, the Court agrees. *Id.* at 920.

### A. Has Public Disclosure Occurred?

"For purposes of § 3730(e)(4), a public disclosure occurs when the critical elements exposing the transaction as fraudulent are placed in the public domain," through particular channels. *Glaser v. Wound Care Consultants, Inc*., 570 F.3d 907, 913 (7th Cir. 2009) (internal quotations and citation omitted). The three channels through which the "relevant information" must enter the public domain are: (1) through a criminal, civil or administrative hearing, (2) through a congressional, administrative or Government Accounting Office report, hearing, audit, or investigation, or (3) through the news media. § 3730(e)(4)(A); *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 130 S.Ct. 1396, 1401-02 (2010).

Here, ITT contends that allegations identical to those asserted by Leveski were not only filed prior to her filing this claim, but Leveski reviewed those similar lawsuits prior to filing the present action. ITT points the Court to *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487 (S.D. Tex. 2003), in support of this contention. *Graves*, a case ultimately decided in 2003, involved two relators employed at the Santa Clara, California ITT campus from 1998 until February 2000. *Graves*, 284 F. Supp. 2d at 490. The relators in *Graves* alleged that

ITT violated the HEA by compensating its admissions and recruitment representatives based directly on the number of their enrolled students. *Id*. The court ultimately disposed of the claim in 2003.

In order to distinguish itself from *Graves*, Leveski asserts first that *Graves* does not address financial aid advisor misconduct, and secondly that the respective violation periods of *Graves* and *Leveski* do not overlap. The Court finds neither of these arguments persuasive. The time overlap argument fails as *Graves* Second Amended Complaint was filed on April 22, 2002, and the *Graves* relators publically disclosed allegations that ITT paid incentive compensation based upon enrollments from "1993 to the present" at "all of ITT's campuses". Although Leveski is correct in the fact that the present suit identifies additional violations by financial aid advisors, this differentiation is insufficient to withstand the "based upon public disclosure" analysis. *Glaser,* 570 F.3d at 907, 920-21 (though a complaint may add a few allegations not covered by the previous disclosure, it is not enough to take this case outside the jurisdictional bar).

Again, public disclosure occurs when the critical elements exposing the transaction as fraudulent are placed in the public domain through the enumerated channels. Presently, the Court is presented with a nearly identical suit, alleging violation of the incentive compensation provision, against the same defendant, ITT. The Court finds that public disclosure occurred upon the filing of *Graves*.

Additionally, ITT argues that Leveski's claims are based upon information publicly disclosed through the news and through similar *qui tam* suits brought against others in the proprietary education industry. When speaking of an industry practice, the question of whether a particular disclosure has been made is of particular interest. Allegations of improper conduct by an industry in general, under certain circumstances may warrant a jurisdictional bar. *United*

*States ex rel. Gear*, 436 F.3d 726, 729. However, the Seventh Circuit found that "to say that a report identifying a *uniform* practice activates § 3730(a)(4)(A) does not imply anything about the effect of a report disclosing that *some but not all* firms use a practice." *Baltazar*, 635 F.3d at 866, 869 (emphasis added).

The Seventh Circuit has rejected the argument that public disclosure requires the specific defendants to be *named*; and found that only industry-wide abuses and investigations that implicate defendants directly identifiable from the public disclosures, may warrant jurisdictional bar. *U.S. v. Emergency Medical Associates of Illinois, Inc.*, 436 F.3d 726, 729 (7th Cir. 2006). Broad statements relating to prevalence that do not designate *which* amongst the many are culpable, do not prevent suit. *Baltazar,* 635 F.3d at 867 ("Reports documenting a significant rate of false claims by an industry as a whole—without attributing fraud to particular firms—do not prevent a *qui tam* suit against any particular member of that industry."). The Court, however, need not address this issue, as it has found the requisite public disclosure occurred in the filing of *Graves*.

### B. Is the Lawsuit Based Upon the Public Disclosure?

An "FCA relator's complaint is "based upon" publicly disclosed allegations or transactions when the allegations in the relator's complaint are substantially similar to allegations already in the public domain." *Glaser*, 570 F.3d at 910. "[A]n FCA *qui tam* action even *partly* based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions." *Glaser*, 570 F.3d at 907, 920-21. Though a complaint may add a few allegations not covered by the previous disclosure, it is not enough to take this case outside the jurisdictional bar. *Id*. "Properly understood; "based upon" does not mean *solely* based upon." *Id*. (emphasis added). Leveski's allegation that Defendant is among the for-profit educational

7

institutions that have submitted intentionally false claims, is substantially similar to the claims asserted in *Graves*, and thus "based upon" the public disclosure for purposes of this analysis.

### C. Is Relator an Original Source?

When an FCA relator's allegations are *substantially similar* to information about an alleged fraud that is already publicly disclosed, as they are here, the statute permits the relator to avoid the jurisdictional bar only if he has "direct and independent knowledge of the information on which the allegations are based" and "voluntarily provided the information to the Government before filing" a *qui tam* action. 31 U.S.C. § 3730(e)(4)(B).

ITT alleges Leveski does not possess direct and independent knowledge of the "fundamental premise of her suit," mainly relating to the PPAs entered into by ITT with the Department of Education and the intent surrounding those agreements. ITT further contends that Leveski has no inside knowledge about ITT's compensation and evaluation practices, has never worked at ITT's headquarters, was never an ITT manager, and did not possess adequate knowledge of the evaluation process, therefore she does not possess direct and independent knowledge of the information on which her allegations are based.

Leveski argues that the facts plead regarding the requisite PPA violation should not be subject to the original source analysis because she has direct and independent knowledge of the information underlying the incentive compensation provision violation. Some courts have agreed with this sentiment, finding that the original source provision requires only that the relator "possess direct and independent knowledge of the information underlying the allegation, rather than direct and independent knowledge of the transaction itself." *U.S. ex rel. Coppock v.*

*Northrup Grumman Corp.*, 2003 WL 21730668 (N.D. Tex., July 22, 2003) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 656 (D.C. Cir. 1994)).[1]

Particularly, Leveski cites to the Seventh Circuit case *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, in support of her proposition. The *Lusby* court found that a relator alleging fraud need not provide billing packages in order to meet the required pleading standard. The court reasoned that because "a relator is unlikely to have those documents unless he works in the defendant's accounting department," requiring this would take "a big bite out of *qui tam* litigation." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009). However, *Lusby* is distinguishable.

In *Lusby*, The relator knew of the underlying contract and the facts that supported his allegation, but was unable to present information evidencing actual payment by the government. The relator in *Lushby* provided the following allegations in his complaint: that the contracts between Rolls-Royce and the United States required all of the engine's parts to meet particular specifications; that the parts did not do so (and the complaint describes tests said to prove this deficiency); that Rolls-Royce knew that the parts were non-compliant (not only because Lusby told his supervisors this but also because audits by Rolls-Royce's design and quality-assurance departments confirmed Lusby's conclusions); and that Rolls-Royce nonetheless certified that the parts met the contracts' specifications. *Lusby*, 570 F.3d at 853. Unlike, Leveski, the *Lusby* relator demonstrated the intricacies of the allegations through personal knowledge of the facts in his complaint.

---

[1] *See also United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 802 (10th Cir. 2002) (rejecting contention that to be original source relator must have direct and independent knowledge of specific documents that informed government that defendant was in compliance with environmental, health and safety laws and of specific individuals who submitted inaccurate claims); *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1050 (8th Cir. 2002) (holding that to qualify as original source, relator need not have personal knowledge of all elements of cause of action).

Leveski additionally cites to the Seventh Circuit's *U.S. ex. Rel. Lamers v. City of Green Bay,* 168 F.3d 1013 (7th Cir. 1999), opinion as support. *Lamers* involved a *qui tam* action against the City of Green Bay ("City"), seeking recovery on behalf of the federal government for public bus transportation subsidies paid to the City in reliance upon fraudulent representations that the City complied with federal statutes and regulations. In *Lamers*, the court found that though the relator was not the "original source of the allegedly false statements made by the City to the government, he was the original source of information about whether defendant's actions were in line with the statements". *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1017 (7th Cir. 1999). Though the defendant argued that the statements it made to the government, not the implementation of its program, were the basis for *Lamers'* fraud claim, the court disagreed. The *Lamers* court ultimately found that because proving fraud requires a comparison between the statements and the truth of how the action was carried out, the actual nature of the defendant's operations that the relator ascertained was "information on which the allegations are based." *Id*.

This Court acknowledges the principles in *Lamers,* however the Court is inclined to adopt the reasoning set forth in *Schultz v. Devry Inc.*; a case whose facts closely resemble those of the present case. In *Schultz v. Devry Inc.*, a Northern District of Illinois court declined to so liberally construe the direct and independent knowledge requirement. The *Schultz* court determined that because the relator did not dispute that she knew nothing about [defendant's] obligations under Title IV or the PPA until her attorney educated her on them, she did not have direct and independent knowledge of the information alleged in the complaint filed in her name. *Schultz v. Devry Inc.*, 2009 WL 562286 (N.D. Ill. March 04, 2009). Ultimately, just as the court in *Schultz*

found, this Court must determine whether Leveski lacked requisite direct and independent knowledge of the information alleged in her complaint.

Leveski submitted the following as evidence of her direct and independent knowledge: 1) the directors of each ITT campus allocated the sales goals of their campus among the sales representatives employed at their campus; 2) on several occasions during her employment, she was reminded that if she wanted an increase in pay, she must increase applications, enrollments and starts; 3) analysis of her performance reviews and 4) the performance evaluation system for financial aid administrators considered percentage of first time disbursement of Title IV loans by the first available date permitted by Federal law, shipping dates of SARs/ISIRs to ITT corporate, packaging students to ensure ITT could receive Pell Grants by the first day of permitted under Federal law, and the amount of Pell Grant proceeds received by ITT corporate from the United States by the deadline set by Federal law, securing "repacks" or continued financial aid for returning students maintaining a Pell reject rate of 9% or less. This evidence, however, must be tempered by Leveski's own deposition testimony revealing her apparent lack of knowledge regarding both the employment evaluation practices of ITT and the payment scheme that ITT utilized for financial aid administrators. *See* Leveski Depo. at 73:14-78:21; 312:21-313:4; 332:23-333:24; 347:9-348:3, 353:11-23.

Further, Leveski's independent knowledge is insufficient because of the nature of the FCA theory in her amended complaint. Leveski's fraud claim depends on her establishing that ITT intended to deceive the Department of Education with respect to its compliance with the incentive compensation regulations.

Ultimately, "the critical elements" Leveski must allege in order to establish her claim are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was

material, causing (4) the government to pay out money or forfeit moneys due." *Lopez*, 698 F. Supp. 2d at 637. It is apparent from Leveski's own testimony that she does not possess the requisite facts "derived from her own experiences which might serve as a basis for alleging these elements." *Id*. Although she possesses facts relating to ITT's incentive compensation practices, this is not enough. Leveski must also possess facts related to the overall claim of fraud and facts that evidence ITT's alleged scheme to intentionally and knowingly deceive the Department of Education. Leveski has presented no facts that support direct and independent knowledge of those particular facts. Because Leveski is not a true whistleblower who gained direct and independent knowledge of the fraud she has alleged while employed at ITT, she does not fall within the original source exception. Therefore, dismissal is warranted.

## IV. CONCLUSION

For the reasons stated herein, ITT's Motion to Dismiss (Dkt. 141) is **GRANTED** and a separate judgment shall enter in favor of ITT. Further, Relator's Motion to Compel Production of Evaluation and Compensation Data (Dkt. 201), Relator's Motion for Leave to File Corrected Brief & Appendix Index (Dkt. 223), Defendant's Motion for Summary Judgment (Dkt. 148), Relator's Objections to Magistrate Judge Dinsmore's July 6, 2011 Ruling on Motion to Strike Advice of Counsel Defense (Dkt. 215), Relator's Motion for Oral Argument (Dkt. 217), and Defendant's Unopposed Motion to Reschedule Hearing on ITT's Motion for Summary Judgment (Dkt. 237) are all hereby **DENIED AS MOOT**.

SO ORDERED.

DATE: 08/08/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Timothy J. Matusheski
LAW OFFICE OF TIMOTHY J. MATUSHESKI
tim@mississippiwhistleblower.com

James L. Zelenay Jr.
GIBSON DUNN & CRUTCHER LLP
jzelenay@gibsondunn.com

Jessica A. Boschee
GIBSON DUNN & CRUTCHER LLP
jboschee@gibsondunn.com

Wayne W. Smith
GIBSON DUNN & CRUTCHER LLP
wsmith@gibsondunn.com

Philip A. Whistler
ICE MILLER
philip.whistler@icemiller.com

Mark I. Labaton
MOTLEY RICE LLP
mlabaton@motleyrice.com

Brianna J. Schroeder
PLEWS SHADLEY RACHER & BRAUN LLP
bschroeder@psrb.com

Shelese M. Woods
United States Attorney's Office
Shelese.woods@usdoj.gov

Timothy J. Hatch
GIBSON, DUNN & CRUTCHER LLP
thatch@gibsondunn.com

Nicola Hanna
GIBSON, DUNN & CRUTCHER LLP
nhanna@gibsondunn.com

Kristopher P. Diulio
GIBSON DUNN & CRUTCHER LLP
kdiulio@gibsondunn.com

Robert M. Zabb
MOTLEY RICE LLP
rzabb@motleyrice.com

John M. Ketcham
PLEWS SHADLEY RACHER & BRAUN LLP
jketcham@psrb.com

Sean M. Hirschten
PLEWS SHADLEY RACHER & BRAUN LLP
shirschten@psrb.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN LLP
emhardt@psrb.com