# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

3161 Michelson Drive
Irvine, CA 92612-4412
Tel 949.451.3800
www.gibsondunn.com

Kristopher P. Diulio
Direct: 949.451.3907
Fax: 949.475.4630
KDiulio@gibsondunn.com

Client: T 43202-00057

March 8, 2011

*Via Email and U.S. Mail*

John M. Ketcham, Esq.
Plews Shadley Racher & Braun LLP
1346 North Delaware Street
Indianapolis, IN 46202-2415

Re:   *United States ex rel. Leveski v. ITT Educational Services, Inc.*, No. 07-867 (S.D. Ind.)

Dear John:

I am writing in response to your March 8, 2011 letter. First, you request additional time for Ms. Leveski to consider dismissing her *qui tam* action. Our demand for a response by Wednesday March 9, 2011 was driven by the fact that ITT Educational Services, Inc. ("ITT") is incurring substantial additional fees and expenses every day that this matter continues. ITT's willingness to forgo seeking its fees and expenses is contingent upon Ms. Leveski's prompt agreement to voluntarily dismiss this action and end ITT's incurrence of unnecessary fees and expenses. We believe the law and facts are clear, and that this decision can be made promptly. Nonetheless, ITT will agree to forgo seeking its fees and expenses if Ms. Leveski agrees to voluntarily dismiss her action by Friday March 11, 2011.

Second, you request citations to Ms. Leveski's deposition transcript. Although the entire deposition supports ITT's request, below are select citations to the rough transcript.

Ms. Leveski was first contacted by Timothy Matusheski in May 2007 through a private investigator he had hired. (Mar. 2, 2011 Tr. at 232:8-234:19.) Mr. Matusheski knew that Ms. Leveski was a former ITT employee because she had filed an employment lawsuit against ITT. (*Id.* at 236:4-24.) Ms. Leveski had previously resolved her employment lawsuit against ITT by agreeing to settle, discharge, release, and waive any and all past and present claims and disputes against ITT. (*Id.* at 210:15-212:14.)

Prior to meeting Mr. Matusheski, Ms. Leveski had no intention of bringing a False Claims Act ("FCA") lawsuit against ITT. (*Id.* at 237:14-18.) Indeed, she left ITT in November 2006 and by January 2007 she had begun to shred ITT-related documents because she "wanted ITT to be behind" her. (Mar. 3, 2011 Tr. at 163:8-10.) Before Mr. Matusheski

# GIBSON DUNN

John M. Ketcham
March 8, 2011
Page 2

contacted her, Ms. Leveski did not believe that ITT was in violation of the regulation governing how employees could be compensated.  (*Id.* at 28:1-14.)

After speaking with Mr. Matusheski, Ms. Leveski conducted Internet research and she specifically reviewed the *Graves* and *Olson* FCA complaints that had been previously filed against ITT.  (*Id.* at 28:25-31:14.)  It was only after having spoken with Mr. Matusheski that she first came to believe that ITT was in violation of the incentive compensation regulation with respect to student recruiters.  (*Id.* at 28:4-9, 122:10-19.)  In fact, Ms. Leveski did not believe that the incentive compensation regulation applied to Financial Aid Administrators until after she spoke with Mr. Matusheski.  (*Id.* at 31:18-32:13, 123:8-22.)  Ms. Leveski was never an ITT manager, never worked at headquarters or any location outside of Troy, and she had no role in evaluating employees.  (Mar. 2, 2011 Tr. at 2:16-53:18.)  While she was employed by ITT, Ms. Leveski never complained that ITT was in violation of the FCA because of its compensation practices.  (Mar. 3, 2011 Tr. at 118:1-5.)

Notably, Ms. Leveski was entirely unaware of ITT's Program Participation Agreements ("PPA")—the lynchpin of her FCA claim—while she was working for ITT.  (Mar. 2, 2011 Tr. at 218:3-17, 219:10-17.)  Ms. Leveski did not learn about the PPAs until after she spoke with Mr. Matusheski.  (Mar. 3, 2011 Tr. at 6:7-12, 8:16-18.)  Ms. Leveski does not contend that ITT makes a promise to comply with the incentive compensation regulation.  (*Id.* at 124:19-21).  Ms. Leveski's only basis for contending that ITT promises to comply with Title IV of the Higher Education Act is through her review of public websites and conversations with Mr. Matusheski.  (*Id.* at 201:14-202:11.)  Ms. Leveski's lack of knowledge is highlighted by the fact that none of the exhibits attached to her complaints were provided by her, and none are ITT documents.  (Mar. 2, 2011 Tr. at 243:8-249:24.)

This testimony makes clear that Ms. Leveski is not a proper relator—same as the putative relators in *Schultz*, *Lopez*, *Jones*, and *Batiste* who were likewise recruited and fed the legal and factual underpinnings of their claims by Mr. Matusheski.

Very truly yours,

Kristopher P. Diulio

KPD/dfk

# GIBSON DUNN

John M. Ketcham
March 8, 2011
Page 3


cc: Frederick D. Emhardt
Brianna J. Schroeder
Timothy J. Matusheski
Timothy J. Hatch

101036318_1.DOC